**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION**

| | |
|---|---|
| ARESTAKES TIMOURIAN, | Case No. CV 19-01915-AS |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| ANDREW M. SAUL, Commissioner of Social Security, | |
| Defendant. | |

**PROCEEDINGS**

On March 15, 2019, Plaintiff filed a Complaint seeking review of the denial of his application for Supplemental Security Income. (Docket Entry No. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Docket Entry Nos. 13, 15). On August 27, 2019, Defendant filed an Answer along with the Administrative Record ("AR"). (Docket Entry Nos. 18-19). On November 22, 2019, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions regarding Plaintiff's claims. (Docket

Entry No. 20).

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On November 30, 2014, Plaintiff, formerly employed as a warehouse supervisor for a marble and granite company (<u>see</u> AR 183-84, 647-49), filed an application for Supplemental Security Income, alleging a disability since April 19, 2013. (<u>See</u> AR 24, 115-21). Plaintiff's application was denied initially on June 17, 2015, and on reconsideration on September 18, 2015. (<u>See</u> AR 53-63A, 77-81).

On January 5, 2018, the Administrative Law Judge ("ALJ"), Ken Chau, heard testimony from Plaintiff, who was assisted by an Armenian interpreter and represented by counsel, and vocational expert Gregory Jones. (<u>See</u> AR 644-59). On February 7, 2018, the ALJ issued a decision denying Plaintiff's application. (<u>See</u> AR 14-27). Applying the five-step sequential process,[1] the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since November 30, 2014. (AR 17). At step two, the ALJ determined that Plaintiff had the severe impairment of degenerative disc disease of the lumbar spine. (AR 17-18).[2] At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments. (AR 21-22).

---

[1] The ALJ initially found that a material change of circumstance (a change in Plaintiff's severe medically determinable impairments) overcame the presumption of non-disability arising from the previous decision of an Administrative Law Judge. (<u>See</u> AR 14-15).

[2] The ALJ found that Plaintiff's other impairments –– benign prostatic hyperplasia without lower urinary tract symptoms; malignant neoplasm of prostate, status post prostate surgery; hypertension; hyperlipedia; insomnia; obesity; and generalized anxiety disorder –– were non-severe. (AR 18-21).

The ALJ then assessed Plaintiff's residual functional capacity ("RFC")[3] and concluded that Plaintiff could perform the full range of medium work.[4]   (AR 22-26).

At step four, the ALJ determined that Plaintiff was able to perform past relevant work as a warehouse supervisor as generally performed (AR 26), and therefore found that Plaintiff was not disabled within the meaning of the Social Security Act.  (AR 27).

The Appeals Council denied Plaintiff's request for review on January 9, 2019. (See AR 7-10).  Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. See 42 U.S.C. §§ 405(g), 1383(c).

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine if it is free of legal error and supported by substantial evidence.   See Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012).  "Substantial evidence" is "more than a mere scintilla, but less than a preponderance[.]"  Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014)(citation omitted).  To determine whether substantial evidence supports a finding, "a court must consider the record as a whole,

---

[3]    A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations.  See 20 C.F.R. § 416.945(a)(1).

[4]    "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c).

3

weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion[.]" Id. at 1009-10 (citations and quotation marks omitted). As a result, "[w]here the evidence can support either affirming or reversing [the ALJ's] decision, [a court] may not substitute [its] judgment for that of the [ALJ]." Id. at 1010 (citation omitted).[5]

## PLAINTIFF'S CONTENTIONS

Plaintiff alleges that the ALJ erred in (1) rejecting the opinions of Plaintiff's treating physician; (2) evaluating Plaintiff's mental impairment; and (3) discrediting Plaintiff's subjective symptom testimony. (See Joint Stip. at 3-7, 11-16, 19-23, 28-30).

## DISCUSSION

After consideration of the record as a whole, the Court finds that the Commissioner's findings are supported by substantial evidence and are free from legal error.

**A.    The ALJ Properly Assessed the Opinions of Plaintiff's Treating Physician, Noobar Janoian, M.D.**

Plaintiff asserts that the ALJ failed to properly reject the opinion of Plaintiff's treating physician, Dr. Janoian. (See Joint

---

[5]    The harmless error rule applies to the review of administrative decisions regarding disability. See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(An ALJ's decision will not be reversed for errors that are harmless).

4

Stip. at 2-7, 11-14).[6]   Defendant asserts that the ALJ properly evaluated Dr. Janoian's opinions.   (See Joint Stip. at 7-11).

An ALJ must take into account all medical opinions of record. 20 C.F.R. § 416.927(b).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); see also Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  The medical opinion of a treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."  20 C.F.R. § 416.927(c)(2).  "When a treating doctor's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, and consistency of the record."  Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017); see also 20 C.F.R. § 416.927(c)(2)-(6).

If a treating or examining doctor's opinion is not contradicted by another doctor, the ALJ can reject the opinion only for "clear and convincing reasons."  Carmickle v. Commissioner, 533 F.3d 1155, 1164 (9th Cir. 2008); Lester v. Chater, 81 F.3d at 830 (9th Cir. 1995).  If the treating or examining doctor's opinion is contradicted by another

---

[6]    Plaintiff does not challenge the ALJ's rejection of the opinions of another treating physician, Karine Gaboian, M.D. (see AR 25, 316-19).

doctor, the ALJ must provide "specific and legitimate reasons" for rejecting the opinion. <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007); <u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir. 1998); <u>Lester</u>, <u>supra</u>. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." <u>Trevizo v. Berryhill</u>, 871 F.3d 664, 675 (9th Cir. 2017)(citation omitted). Finally, when weighing conflicting medical opinions, an ALJ may reject an opinion that is conclusory, brief, and unsupported by clinical findings. <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1216 (9th Cir. 2015); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001).

Physicians at All for Health, Health for All, including Noobar Janoian, M.D., treated Plaintiff from July 10, 2013 to October 10, 2017. While Leonardo Garduno, M.D., was Plaintiff's primary care provider, Dr. Janoian personally treated Plaintiff on four occasions (November 22, 2013, February 7, 2014, March 13, 2014, April 3, 2014). (<u>See</u> AR 320-58, 362-486, 508-92).

Dr. Janoian provided the following information in a Physical Residual Functional Capacity Questionnaire dated October 25, 2017 (<u>see</u> AR 594-97): Dr. Janoian diagnosed Plaintiff with low back pain, sacroiliitis, generalized anxiety disorder, hypertension, insomnia and disorder of the prostate, gave Plaintiff a "very guarded" prognosis, and listed Plaintiff's symptoms as pain, stiffness, fatigue and anxiety. (AR 594). Dr. Janoian identified the clinical findings and objective signs of his findings as tenderness to palpation over paravertebral lumbar muscles and degenerative disc disease of the lumbar spine and

stated that Plaintiff reported that the side effects of medications were drowsiness, malaise and fatigue. (Id.). Dr. Janoian found, *inter alia*, the following: Plaintiff's impairments lasted or could be expected to last at least 12 months; in an 8-hour workday, Plaintiff can lift and/or carry less than 10 pounds frequently, can lift and/or carry 20 pounds occasionally (less than 1/3 of the workday), and can never lift 50 pounds; Plaintiff can stand and/or walk (without an assistive device) about 6 hours in an 8-hour workday; Plaintiff can sit less than 6 hours in an 8-hour workday; Plaintiff requires a job that permits shifting positions at will from sitting, standing or walking; Plaintiff would need to take unscheduled breaks every 30 minutes for 15 to 20 minutes; Plaintiff's abilities to push and/or pull are limited in the upper and lower extremities; Plaintiff can occasionally bend, climb, crouch, balance, kneel and crawl; Plaintiff needs to avoid temperature extremes, humidity/wetness and heights; and Plaintiff's impairments would cause Plaintiff to be absent from work an average of more than 3 times a month. (AR 594-96).

In a letter dated October 25, 2017 (see AR 508-11), Dr. Janoian listed the following objective findings: anxiety, moderate tenderness and spasm over bilateral paravertebral lumbar muscles; forward flexion (35 degrees), a positive straight leg test bilaterally, degenerative changes in the lumbar spine and straightening of the lordotic curvature, decreased range of motion, and marked degree of cognitive disorganization and memory changes indicated in standardized memory testing (MMSE: 21/30). (AR 510). Dr. Janoian found, *inter alia*, the following: Plaintiff's impairments will prevent him from "any normal work activity where prolonged sitting, standing, bending or lifting is

required"; Plaintiff's anxiety, depression, memory and concentration deficit will interfere with his ability to interact with others and will adversely affect his clear state of mind and decision-making ability; and Plaintiff's impairments will produce frequent "good" and "bad" days, rendering him unable to maintain a regular work schedule. (AR 511).

The ALJ addressed Dr. Janoian's opinions as follows:

I give this opinion [October 25, 2017 letter] no weight for several reasons. First, the conclusions that the claimant is unable to perform the listed exertional and postural activities and cannot maintain a regular work schedule are unsupported by the objective evidence of record showing only mild findings. While Dr. Janoian relies on his "objective findings" of positive straight leg testing and standardized memory testing, these findings and his opinion are inconsistent with the mild radiography and routine longitudinal treatment records, as well as the invalidated psychometric testing results noted by consultative examiner Dr. Sharokhi (Exhibit 8F). Secondly, as noted in Finding #2 above, the claimant's mental impairment is found to be non-severe with only mild limitations in interacting with others and in understanding, remembering, and applying information, which were supported by the evidence as a whole. Dr. Janoian's opinion is not supported by his own occasional treatment records, in which he noted normal mental status examination findings; for example, in a March 2014 office

visit, he noted the claimant was "negative for psychiatric symptoms" (Exhibit 12F/14).

I also give no weight to Dr. Janoian's medical source statement, dated October 25, 2017, in which he opined the claimant can lift and carry 20 pounds occasionally and up to 10 pounds frequently; stand and/or walk for six hours in an eight-hour day and sit for less than six hours in an eight-hour day; needs to be able to shift positions at will every 1-2 hours for 15-20 minutes; can be expected to be absent from work more than three times a month; is limited from pushing and pulling with both upper and lower extremities; can occasionally perform postural activities; and must avoid temperature extremes, humidity/wetness and heights (Exhibit 21F). I give no weight to this opinion, as it is unsupported by the evidence of record, which supports greater functional abilities than stated.

(AR 25).

Since Dr. Janoian's opinions were largely contradicted by the opinions of other physicians, the ALJ was required to provide "specific and legitimate" reasons for rejecting Dr. Janoian's opinions. See Trevizo, 871 F.3d at 675-76.[7]  The ALJ met this standard.

_____

[7]    The September 16, 2015 opinion of State Agency physician, J. Frankel, M.D. -- to which the ALJ gave "great weight" (AR 24) -- contradicted Dr. Janoian's opinions, in that Dr. Frankel opined, inter alia, that Plaintiff can lift and/or carry 25 pounds frequently and 50 pounds occasionally, can sit about 6 hours in an 8-hour workday, can push and/or pull unlimited (other than shown for lift and/or carry), and
(continued...)

The ALJ properly determined that the objective medical evidence did not support Dr. Janoian's opinion that Plaintiff was unable to do work involving prolonged sitting, standing, bending or lifting and was unable to maintain a regular work schedule due to frequent "good" and "bad" days. As the ALJ found, Dr. Janoian's opinions were inconsistent with the longitudinal treatment records concerning Plaintiff's back issues as well as Plaintiff's mental health condition.

---

[7] (...continued)
has no postural or environmental limitations. (See AR 487-92).

The June 10, 2015 opinion of State Agency physician, K. Quint -- to which the ALJ gave "significant weight" (AR 24) -- contradicted Dr. Janoian's opinions, in that Dr. Quint opined that Plaintiff can lift an/or carry 25 pounds frequently and 50 pounds occasionally, can sit about 6 hours in an 8-hour workday, can push and/or pull unlimited (other than shown for lift and/or carry), and has no postural and environmental limitations. (See AR 53-55, 56-59).

The December 10, 2013 opinion of examining physician, Sophail Afra, M.D. (internal medicine) -- to which the ALJ gave "partial significant weight" (but less weight to the postural limitations) (AR 24) -- contradicted Dr. Janoian's opinions, in that Dr. Afra opined that Plaintiff can lift, carry, push and pull 25 pounds frequently and 50 pounds occasionally, can sit 6 hours out of an 8-hour day, can bend, kneel, stoop, crawl and crouch occasionally, can climb ladders occasionally, and has no environmental limitations. (See AR 308-14).

In his discussion of the "paragraph B" criteria for mental functioning, the ALJ gave "significant weight" to the June 15, 2015 opinion of State Agency psychiatric consultant, Judith Levinson, Ph.D. (AR 20-21) and "partial weight" to the September 17, 2015 opinion of State Agency psychiatric consultant, Marina Vea, M.D. (AR 21), both of whom contradicted Dr. Janoian's opinion by opining that Plaintiff had mild difficulties in maintaining social functioning. (See AR 55-56, 496-506).

Since Dr. Janoian's opinion about Plaintiff's need to shift positions at will and need for unscheduled breaks, and that Plaintiff would be absent from work were not contradicted by the opinions of other physicians, the "clear and convincing" standard applies to these findings. As set forth in this decision, the Court finds that the ALJ met this standard in rejecting Dr. Janoian's opinions in these areas.

Dr. Jonoian based his opinion on objective findings indicative of back issues, such as "moderate tenderness and spasm over bilateral paravertebral lumbar muscles", forward flexion (35 degrees), and a positive straight leg test bilaterally,[8] "[d]egenerative changes of lumbar spine and straightening of the lordotic curvature," and decreased range of motion. (AR 510). However, the majority of medical records concerning treatment for Plaintiff's back, including those Plaintiff relies on (see Joint Stip. at 5), show only *mild* findings during physical examinations. (See AR 355, 330 [July 10, 2013 and April 3, 2014: back stiffness and decreased range of motion], 327 [May 14, 2014: "Lumbar spine - muscle spasm"], 397 [June 17, 2014: same], 373 [September 25, 2014: same; 369 [October 23, 2014: same], 366 [November 20, 2014: same], 363 [December 23, 2014: same], 426 [January 22, 2015: same], 466 [April 28, 2015: "Lumbar spine - muscle spasm, Range of motion: mild pain w/ motion"], 471 [May 28, 2015: same] 477 [July 7, 2015: same], 480 [August 7, 2015: same], 580 [September 8, 2015: *same* 577 [January 13, 2016: same], 566 [May 19, 2016: same], 562 [June 30, 2016: "Lumbar spine - Range of motion: mildly reduced [Range of Motion]"], 556 [August 9, 2016: "Lumbar spine - muscle spasm, Range of motion: mild pain w/ motion"], 541 [November 15, 2016: same], and 515 [September 11, 2017: same); see also AR 349, 344 and 335 [September 19,

---

[8] The "straight leg raise test" requires a medical practitioner to raise a patient's leg upward while the patient is lying down. The test stretches the nerve root. *The Merck Manual of Diagnosis and Therapy*, 1490 (17th Ed. 1999). "A positive Lasegue or straight leg raising test (pain on straight leg raising) produces pain in the sciatic nerve and is significant for compression of the L4-L5 or L5-S1 spinal nerve roots." Primero v. Astrue, 2013 WL 394883, *2 at n.6 (C.D. Cal. Jan. 31, 2013)(citation omitted).

2013, October 24, 2013, and February 7, 2014: Plaintiff had no radicular pain].

The December 10, 2013 report of consultative internal medicine examiner, Sohail Afra, M.D., which the ALJ discussed (see AR 23), also showed only mild findings. (See AR 311-12 [Cervical: "No muscular tenderness noted paraspinal. Flexion (0°-45°), extension (0°-55°), lateral bending (0°-40°), and rotation (0°-70°) are within normal limits"; Dorsolumbar: "Moderate tenderness to palpation noted over the paraspinal areas with mild paraspinal spasm noted on examination. Flexion painful and decreased to about 40° (0°-90°), extension to 5°-10° (0°-35°), and rotation 15° (O°-30[°]); and Straight Leg Raising Test: "Negative bilaterally (0°-90°)]).

Plaintiff contends that Dr. Jonoian's opinions are supported by old imaging records (see Joint Stip. at 5-6, 12), specifically citing October 2008 CT scans of the lumbar spine (see AR 248, 250), and a July 2011 X-ray of the lumbar spine (see AR 251), but these records reflect essentially mild findings that do not support Dr. Jonoian's restrictive opinions. In any event, the ALJ was entitled to rely on more recent diagnostic imaging which reflect mild findings. (See AR 315 [April 2014 three views of lumbar spine, showing: "There is a straightening of the lordotic curvature without evidence of subluxation. The vertebral body height is within normal limits. There is moderate osteophyte formation along the L3 and L4 vertebrae with minimal osteophyte formation along the L5 and S1 vertebrae. There is mild narrowing of L3-L4 disc space identified."]).

Dr. Janoian listed standardized memory testing as indicative of a more serious mental health issue. (AR 510 ["Standardized memory testing reveals marked degree of cognitive disorganization and memory changes (MMSE: 21/30)."]). However, the ALJ properly found that this finding was undermined by the December 5, 2013 report of consultative psychological examiner, Baniafshe Sharokhi, Ph.D., who determined that the validity of Plaintiff's scores on a memory test (WMS-IV) were suspect because Plaintiff's effort was "extremely inconsistent effort" and Plaintiff's scores were "extremely inconsistent with his memory functioning on the mental status examination." (AR 305 ["Test results are extremely inconsistent. The claimant's cognitive abilities appear higher than shown on psychometric testing. The claimant's extremely inconsistent effort, impulsivity, low motivation, and aborting of subtests prematurely affected testing results. Test results should be interpreted with these caveats in mind."]).

Plaintiff points out that several medical records contained notations regarding signs/symptoms of mental health issues, such as anxiety, depression, hopelessness, insomnia, "[l]ittle interest or pleasure in doing things," and lack of energy (see Joint Stip. at 6, citing AR 372 [September 25, 2014], 369 [October 23, 2014], 366 [November 20, 2014], 453 [December 23, 2014], 426 [January 22, 2015], 430 [February 24, 2015], 439 [March 24, 2015], 466 [April 23, 2015], 471 [May 28, 2015], 476 [July 7, 2015], 480 [August 7, 2015], 580 [September 8, 2015], 569 [February 12, 2016], 562 [June 30, 2016], 555 [August 9, 2016], 552 [September 8, 2016], 546 [October 11, 2016], 538 [November 15, 2016], and 515 [September 11, 2017]. However, the medical

record as a whole, including Dr. Janoian's own treatment notes, fails to support Dr. Janoian's opinion that Plaintiff's mental health issues would affect his ability to maintain a regular work schedule due to frequent "good" and "bad" days and would interfere with his ability to interact with others.

As the ALJ noted, Dr. Janoian's own treatment notes did not reflect that Plaintiff had serious mental health issues. (See AR 339 [November 22, 2013: Under review of neurological/psychiatric systems, Dr. Janoian wrote, "Negative for psychiatric systems" and that Plaintiff was alert and oriented], 336 [February 7, 2014: same], 332-33 [March 13, 2014: same], 330 [April 3, 2014: same]). See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005)(upholding ALJ's rejection of the treating physician's opinion because his own clinical notes contradicted his own opinion); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003)("We hold that the ALJ properly found that [the treating doctor's] extensive conclusions regarding [the claimant's] limitations are not supported by his own treatment notes."); see also See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002)("The ALJ need not accept the opinion of any physician including the treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); see also 20 C.F.R. § 416.927(c)(3)("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."); 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent a medical opinion is with

the record as a whole, the more weight we will give to that medical opinion.").

In addition, other physicians found that Plaintiff was alert and oriented during various office visits. (See AR 357 [July 10, 2013], 381 [July 25, 2013], 353 [August 25, 2013], 350 [September 19, 2013], 345 [October 24, 2013], 386 [November 22, 2013], 303 [December 5, 2013, psychological evaluation], 310 [December 10, 2013, internal medicine evaluation], 527 [May 9, 2017], and 602 [May 22, 2017]).

As the ALJ noted (see AR 19-21, 25), Dr. Jonoian's opinion concerning Plaintiff's inability to interact with others was contradicted by: (a) the December 5, 2013 findings of Dr. Sharokhi (a consultative psychological examiner) that Plaintiff "was cooperative during the evaluation and appropriate with staff in the waiting room," "was coherent, stable and appropriate," and Dr. Sharokhi's opinion that Plaintiff "presents with the ability to accept instructions from supervisors" and "was essentially socially appropriate with the examiner and staff in today's evaluation and presents with the ability to interact appropriately with supervisors, coworkers and peers" (AR 303, 306-07); (b) the June 15, 2015 opinion of Dr. Levinson (a State Agency psychiatric consultant) that Plaintiff had mild difficulties in maintaining social functioning (AR 55); and (c) the September 17, 2015 opinion of Dr. Vea (a State Agency psychiatric consultant) that Plaintiff had mild difficulties in maintaining social functioning (AR 504). See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)(an examining physician's opinion may constitute substantial evidence to

reject a treating physician's opinion); <u>Thomas v. Barnhart</u>, 278 F.3d at
957 ("The opinions of non-treating or non-examining physicians may also
serve as substantial evidence when the opinions are consistent with
independent clinical findings or other evidence in the record."); <u>see
also</u> <u>Morgan v. Comm'r of Soc. Sec.</u>, 169 F.3d 595, 603 (9th Cir.
1999)("The ALJ is responsible for resolving conflicts in medical
testimony, and resolving ambiguity.").

The ALJ properly determined that Dr. Janoian's opinion about
Plaintiff's physical limitations, <u>see</u> AR 594-96, was not supported by
the objective medical evidence of Plaintiff's back and mental health
conditions. As the ALJ noted (<u>see</u> AR 24), Dr. Janoian's opinions were
contradicted by three medical opinions -- (a) the September 16, 2015
opinion of Dr. Frankel (AR 487-92); (b) the June 10, 2015 opinion of K.
Quint(AR 53-55, 56-59); and (c) the December 10, 2013 opinion of Dr.
Afra (AR 308-14).[9]  The ALJ properly found that these three opinions
(with the exception of the postural limitations found by Dr. Afra) were
consistent with the mild findings in the medical records discussed
above.  <u>See</u> <u>Tonapetyan</u>, 242 F.3d at 149; <u>Thomas</u>, 278 F.3d at 957.

Finally, contrary to Plaintiff's assertion (<u>see</u> Joint Stip. at 6),
since Dr. Janoian's findings in the Questionnaire and letter were not
inadequate, there was no reason for the ALJ to recontact Dr. Janoian to
clarify his opinions regarding Plaintiff's functional limitations.  <u>See</u>
<u>Bayliss V. Barnhart</u>, 427 F.3d 1211, 1217 (9th Cir. 2005)("An ALJ is
required to recontact a doctor only if the doctor's report is ambiguous

---

[9]  <u>See</u> note 7.

16

or insufficient for the ALJ to make a disability determination.")(citations omitted); <u>Thomas</u>, 278 F.3d at 958 ("[T]he requirement for additional information is triggered only when the evidence from the treating medical source is inadequate to make a determination as to the claimant's disability.").

The ALJ provided specific and legitimate and clear and convincing reasons, supported by substantial evidence in the record, for giving the opinions of Dr. Janoian no weight.

**B.    The ALJ Properly Evaluated Plaintiff's Mental Limitations**

Plaintiff asserts that the ALJ failed to include any of Plaintiff's mild mental limitations in the RFC assessment. (<u>See</u> Joint Stip. at 15-16, 19). Defendant contends that because the ALJ properly found that Plaintiff's mental condition did not cause more than minimal limitations on his ability to perform basic work activities and as a result, was not a severe impairment, the ALJ was not required to include Plaintiff' mild mental limitations in the RFC assessment. (<u>See</u> Joint Stip. at 17-18). The Court agrees.

At step two, the ALJ addressed the severity of Plaintiff's mental impairment, specifically, generalized anxiety disorder. After providing accounts of Plaintiff's hearing testimony and of the evidence regarding Plaintiff's mental health issues (<u>see</u> AR 19), the ALJ found, in the "paragraph B" analysis, that Plaintiff had mild limitations in understanding, remembering or applying information, interacting with

others, concentration, persistence or pace, and adaptation or managing of himself. (See AR 19-20). The ALJ's findings were supported by the opinions of (1) Dr. Sharokhi, the consultative psychological examiner, that Plaintiff had mild limitations in understanding, remembering and carrying out instructions and in maintaining attention, concentration, persistence and pace (AR 299-307); (2) Dr. Levinson, the State Agency psychiatric consultant, that Plaintiff had a mild restriction in activities of daily living and mild difficulties in social functioning and in concentration, persistence and pace (AR 55); (3) Dr. Vea, the State Agency psychiatric consultant, that Plaintiff had a mild restriction in activities of daily living, mild difficulties in social functioning, and moderate difficulties in concentration, persistence or pace (AR 504); and (4) Anthony Francisco, the consultative psychological examiner, who issued reports in 2011 and 2012 finding that Plaintiff had moderate to severe overall task orientation and interpersonal orientation impairments (AR 252-58), and mild to marked limitations in understanding and memory, sustained concentration and persistence, social interaction, and adaptation (AR 266-71). (See AR 19-21). Based on a consideration of the overall record, the ALJ concluded that Plaintiff's "medically determinable mental impairment of generalized anxiety disorder does not cause more than minimal limitation in the [Plaintiff's] ability to perform basic mental work activities and is therefore non-severe." (AR 19; see also AR 21).

An ALJ is required to consider all limitations, whether severe or non-severe, when assessing a claimant's RFC. See 20 C.F.R. § 416.945(a)(2)("We will consider all of your medically determinable

18

impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . when we assess your residual functional capacity."); see also Hutton v. Astrue, 491 Fed.Appx. 850, 850-51 (9th Cir. 2012)(although ALJ found claimant's impairment of PTSD to be non-severe because it caused only "mild mental limitations in the area of concentration, persistence or pace, and no episodes of decompensation," the ALJ was required to consider the mild limitations in the RFC analysis); but see Ball v. Colvin, 2015 WL 2345652, at *2-3 (C.D. Cal. May 15, 2015)(ALJ did not err in not including mild mental limitations in RFC where ALJ's finding that mental limitations do not cause more than minimal limitations in Plaintiff's ability to basic mental activities was supported by the record, and distinguishing Hutton as based on the ALJ's "explicit refusal" to consider the claimant's mild mental limitations caused by PTSD in the RFC).

However, an ALJ need not include such non-severe limitations in the RFC if they do not cause more than a minimal limitation on a claimant's ability to work. See Medlock v. Colvin, 2016 WL 6137399, at *5 (C.D. Cal. Oct. 20, 2016)("Consideration of "the limiting effects of all impairments" does not necessarily require the inclusion of every impairment into the final RFC if the record indicates the non-severe impairment does not cause a significant limitation in the plaintiff's ability to work."); Ball, supra (mild mental impairments "by definition do not have more than a minimal limitation on Plaintiff's ability to do basic work activities . . . which translates in most cases into no

functional limitations," and thus the ALJ was not required to include them in the RFC).

Although the ALJ did not include Plaintiff's mild mental limitations in the RFC, the ALJ did consider Plaintiff's mild mental limitations in assessing the RFC. See AR 16-17 ("[I]n making th[e] finding [about the RFC], I must consider all of the claimant's impairments, including impairments that are not severe"); 22 ("[I]n making the finding [about the RFC], I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence"), 25 ("Secondly, as noted in [the finding in step number two] above, the claimant's mental impairment is found to be non-severe with only mild limitations in interacting with others and in understanding, remembering and applying information, which were supported by the evidence as a whole."). See Scotellaro v. Colvin, 2015 WL 4275970, at *9 (D. Nev. June 22, 2015), report and recommendation adopted, 2015 WL 4275978 (D. Nev. July 14, 2015)("Although the ALJ did not extensively discuss Plaintiff's mental impairment at step four, he thoroughly discussed the evidence supporting his findings at step two and incorporated them by reference in his RFC analysis.").

In any event, the ALJ was not required to include the mild mental limitations in the RFC because, as the ALJ found, the record did not show that Plaintiff's mental impairment caused a significant limitation in his ability to work. See McIntosh v. Berryhill, 2018 WL 3218105, at *4 (C.D. Cal. June 29, 2018)(because ALJ concluded, based on the record,

20

that mental impairment was nonsevere and caused no more than minimal restrictions, there was no requirement to include it in the RFC); <u>Medlock</u>, 2016 WL 6137399, at *5 ("[B]ecause Plaintiff's mental impairments were not severe and did not cause any significant impairment, the ALJ's RFC determination was proper.").

## C. The ALJ Provided Clear and Convincing Reasons for Rejecting Plaintiff's Subjective Symptom Testimony

Plaintiff asserts that the ALJ did not provide clear and convincing reasons for rejecting Plaintiff's testimony about his symptoms and limitations. (<u>See</u> Joint Stip. at 19-23, 28-30). Defendant asserts that the ALJ provided proper reasons for finding Plaintiff's subjective symptom testimony not fully credible. (<u>See</u> Joint Stip. at 23-28).

### 1. <u>Legal Standard</u>

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis. <u>Trevizo v. Berryhill</u>, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. <u>Id.</u>, (citing <u>Garrison v. Colvin</u>, 759 F.3d 995, 1014-15 (9th Cir. 2014)). "In this analysis, the claimant is <u>not</u> required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." <u>Id.</u> (emphasis in original)(citation omitted). "Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof." <u>Id.</u> (citation omitted).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity. Id. (citation omitted); see also Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."); Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996)("[T]he ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." Garrison, 759 F.3d at 1015 (citation omitted).

Where, as here, the ALJ finds that a claimant suffers from a medically determinable physical or mental impairment that could reasonably be expected to produce his alleged symptoms, the ALJ must evaluate "the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult." Soc. Sec. Ruling ("SSR") 16-3p, 2017 WL 5180304, at *3.[1]    SSR 16-3p eliminated the term

_____

[1]     SSR 16-3p, which superseded SSR 96-7p, is applicable to this case, because SSR 16-3p, which became effective on March 28, 2016, was in effect at the time of the Appeal Council's January 9, 2019 denial of Plaintiff's request for review.  20 C.F.R. § 416.929, the regulation on evaluating a claimant's symptoms, including pain, has not changed.

"credibility" from the Agency's sub-regulatory policy.  However, the Ninth Circuit Court of Appeals has noted that SSR 16-3p:

> makes clear what [the Ninth Circuit's] precedent already required: that assessments of an individual's testimony by an ALJ are designed to "evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms," and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.

Trevizo, 871 F.3d at 678 n.5 (quoting SSR 16-3p)(alterations omitted).

In discrediting the claimant's subjective symptom testimony, the ALJ may consider: "ordinary techniques of credibility evaluation, such as . . . prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and the claimant's daily activities." Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).  Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant.  Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014).  In addition, the ALJ may consider the observations of treating and examining physicians regarding, among other matters, the functional restrictions caused by the claimant's symptoms.  Smolen, 80 F.3d at 1284; accord Burrell, supra.  However, it is improper for an ALJ to reject subjective testimony based "solely" on its inconsistencies with the objective medical evidence presented.  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009)(citation omitted).

The ALJ must make a credibility determination with findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008)(citation omitted); see Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) ("A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.") (citation omitted). Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

2.    Plaintiff's Subjective Statements and Testimony

Plaintiff made the following statements in a Function Report – Adult dated April 15, 2015 (see AR 195-204)[2]:

> He lives in a house with family.  His back pain, leg pain, muscle pain, chest pain, heavy breathing, poor memory, depression, and sleeping problems limit his ability to work. He takes medicines for his conditions; the medicines do not cause side effects.  (AR 195, 203).[3]

[2]    The date –- "4-15-15" -- is stated on the bottom of the first page of the Function Report, rather than in the box next to Plaintiff's name on the last page of the Function Report. (See AR 195, 204).  The List of Exhibits states that the Function Report is dated "04/15/2015". (AR 3).

[3]    In a Disability Report - Appeal dated August 6, 2015, Plaintiff stated that his back pain, leg pain, chest pain, and shortness of breath have gotten worse since August 1, 2015, and that he takes the following prescribed medicines: Ambien (for sleep), Zocor (for cholesterol), Motrin (for pain), Amlodipine and Diphenhydramine (for
(continued...)

With respect to his daily activities, he does not want to do anything or go anywhere. He does not take care of anyone else or pets. Before his conditions he was able to work and do everything. His conditions affect his abilities to dress and bathe (he can dress and bathe with medicine) and to care for his hair and shave (he does not care). He needs somebody to remind him to take care of his personal needs and grooming and to take medicine. He does not prepare his own meals because of his conditions. He cannot do any household chores or yard work because of his conditions (back pain, leg pain, muscle pain). He goes outside once or twice a week, either driving or riding in a car; he cannot go out alone because of dizziness and memory issues. He shops only with somebody's help. He is able to count change, but he is unable to pay bills, handle a savings account, or use a checkbook/money orders due to a lack of concentration. Before his conditions, he was able to handle money. He does not have any hobbies or interests because of his conditions. He does not spend time with others. He goes to his doctor's office on a regular basis (once a month), and needs to be accompanied and reminded to go. He has problems getting along with others because he does not like noises; he did "mostly everything" before his conditions began. (AR 196-200).

His conditions affect his abilities to lift, squat, bend, stand, reach, walk, sit, kneel, stair-climb, concentrate, understand, follow instructions and get along with others and affect his memory. He can walk about 50 to 60 feet before needing to rest. He can pay attention for about a couple of minutes. He does not finish what he starts. He cannot concentrate on written instructions. He cannot concentrate on or memorize spoken instructions. He becomes very nervous and upset around authority figures. He has never been fired or laid off from a job because of problems getting along with other people. He does not handle stress well because he panics quickly. His unusual behavior or fears are getting worse. (AR 200-01).

Plaintiff gave the following testimony at the administrative hearing (see AR 646-56):

He lives with his wife and kids. He graduated from physical university (four years) in Armenia. He attended Los Angeles City College for one year. (AR 646-47, 655).

---

[3] (...continued)
high blood pressure), Flexeril (for muscle spasms), and Heclizine (for dizziness). (AR 213, 217).

He worked as a warehouse supervisor at Armand Art (marble/granite tabletops for furniture) for approximately 25 years. He was involved in shipping and receiving. He supervised 2 to 4 people. He had to lift 50 to 100 pounds of merchandise and had to bend. He was on his feet all day ("[w]e walk and we walk" and only sat for lunch). He last worked there in approximately 2008 (when the business was sold), and he has not worked for pay since then. He tried looking for other work for a couple of years, but stopped looking because of his pain. (AR 646-50).

Since the time of his prior hearing (see AR 662 [January 7, 2013], his back pain, which radiates down his right leg, has gotten worse. He experiences back pain every 2 to 3 days. His back pain makes him want to sit when he walks and to walk when he sits. He can walk approximately 15 to 25 minutes (a couple of blocks) until he gets tired; his back pain does not increase during that time ("It's not too much, but it's still pain."). He can sit comfortably for approximately 20 to 30 minutes before he has to walk in order for his pain to become bearable. Even when he lays down, he has to start walking again. He can lift 15 to 10 pounds, but lifting more causes excruciating pain. He has difficulty bending. He still has shortness of breath when he walks. (AR 650-52).

He has been seeing doctors, including Dr. Garduno (mostly) and Dr. Janoian, at All for Health in Glendale every one to three months for a couple of years. The doctors have prescribed him medicines for pain, depression and insomnia. He has not been able to sleep well for a couple of years because of pain. The pain medicine relieves the pain for a couple of hours. He had surgery for prostrate cancer in May 2017. His depression and anxiety have gotten worse since the last hearing; he has difficulties with concentration and focus (he cannot watch television or read books). However, he has not yet gotten a psychiatric referral. (AR 652-56).

//

//

//

3.   <u>The ALJ's Credibility Findings</u>

After briefly discussing Plaintiff's testimony (<u>see</u> AR 23),[4] the ALJ stated: "After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 23).

The ALJ then addressed Plaintiff's testimony as follows:

As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because radiographic and examination findings show generally mild finds, as discussed in detail below.

_____

[4]    The ALJ stated:

I have considered all of the claimant's subjective complaints, including statements from the administrative hearing. At the hearing, the claimant testified his back pain is worsening, becoming "really bad" every two or three days, and that he also experiences pain radiating down his legs, more so in his right leg. He indicated that [he] is able to lift up to 15 pounds, but will experience sharp back pain if he attempts to lift more, and has also difficulty bending. He testified he needs to change positions frequently, such as needing to sit after 15-25 minutes, although walking does not necessarily increase his low back pain. In addition, he testified he experiences shortness of breath on exertion. He reported needing to walk after sitting for about 20-30 minutes. As for treatment, he indicated pain medications help a little, but provide only temporary relief.

(AR 23).

27

Although treatment notes since ALJ Reason's prior decision[5] indicate the claimant reported back pain, they show he made complaints of radiculopathy at some visits, while denying it at other visits (e.g., Exhibit [AR 329, 335]). This medical evidence since ALJ Reason's prior decision continues to support a full range of medium work, and I find the claimant's subjective complaints are not fully supported by the objective findings and are inconsistent with the routine, conservative treatment documented in the record.

The medical evidence of record regarding the claimant's impairments support the above residual functional capacity assessment. For instance, testing supports the diagnoses. In April of 2014, the claimant underwent lumbar spine imaging, which revealed straightening of the lordoctic curvature and mild degenerative changes of the lumbar spine ([AR 315]). Additionally, consistently mild clinical findings further support the residual functional capacity assessment. In December of 2013, the claimant underwent a consultative internal medicine examination by Sohail K. Afra, M.D., who noted moderate tenderness to palpitation with mild paraspinal spasm in the dorsolumbar area, as well as decreased, painful flexion, and decreased extension, lateral bending, and roation ([AR 311-12]. Dr. Afra also noted normal motor strength,

---

5      [Administrative Law Judge Sally Reason's decision on Plaintiff's earlier applications for Disability Insurance Benefits and Supplemental Security Income is dated April 18, 2013. (See AR 31-39).]

sensation, reflexes, and gait, although the claimant exhibited
mild difficulty walking on toes and on heels ([AR 312]).

Treatment notes from his primary care provider, All for
Health, contain largely routine office visits, and [claimant]
was primarily seen by Leonardo Garduno and occasionally by
Noobar Janoian, to whom the claimant reported complaints of
back pain with occasional radiculopathy [(AR 320-58, 362-486,
507-92]).  Exam findings of his back were generally normal to
mild, noting occasional muscle spasm, stiffness, or decreased
range of motion (e.g., [AR 325, 327, 329-30, 335; AR 363, 366;
AR 375, 377; AR 562), but no gait or neurologoical
disturbances (e.g., [AR 329, 339, 349]).

Contrary to the allegations of difficulty with walking,
the claimant also reported walking for exercise daily to his
primary care provider and to consultative psychological
examiner Dr. Sharokhi ([AR 302; AR 356; AR 376]).  He also
received only conservative treatment, such as prescribed
Motrin, naproxen, and robaxin, and he advised (sic) to use
topical over-the-counter patches and creams as needed ([AR
320-58, 362-486; AR 563]).

(AR 23-24, footnoted bracket added).

After addressing the opinions of Plaintiff's treating physicians
(Drs. Jonian and Gaboian), the consultative internal medicine examiner
(Dr. Afra) and the State Agency medical consultants (Drs. Frankel and

29

Quint), as well as the statement by Plaintiff's son (see AR 24-25), the ALJ concluded that:

> "In sum, the above residual functional capacity assessment is supported by the objective medical evidence contained in the record. The persuasiveness of the claimant's allegations is weakened by a lack of consistency between his allegations and the medical evidence. Although inconsistent information provided by the claimant may not be the result of a conscious intent to mislead, the inconsistencies nevertheless suggest the information provided by the claimant generally may not be entirely reliable. The claimant does experience some limitations, but only to the extent described in the residual functional capacity above."

(AR 26).

4. <u>Analysis</u>

The ALJ's finding that Plaintiff's testimony about the intensity, persistence and limiting effects of his pain and symptoms was not credible is supported by substantial evidence.[6]

---

[6] The Court will not consider reasons for discounting Plaintiff's subjective symptom testimony that were not given by the ALJ in the decision (see Joint Stip. at 25-26, i.e., inconsistent statements about back pain, inconsistent efforts during psychological examination). See <u>Garrison</u>, 759 F.3d at 1010 ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."); <u>Connett</u>, 340 F.3d at 874 ("We are constrained to review the reasons the ALJ asserts."; citing <u>SEC v. Chenery Corp</u>., 332 U.S. 194, 196 (1947) and <u>Pinto v. Massanari</u>, 249 F.3d 840, 847-48 (9th Cir. 2001)).

The ALJ properly determined that Plaintiff's testimony about the intensity, persistence and limiting effects of his symptoms were not supported by the objective medical evidence (see AR 23). See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001)("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."); SSR 16-3p, *5 ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities"). As the ALJ pointed out, the medical records concerning Plaintiff's back issues reflected only mild clinical and diagnostic findings. (See AR 311-12, 315, 324-25, 327, 330, 333, 335, 344, 349, 355, 363, 339, 366, 369, 373, 376, 397, 466, 471, 477, 480, 515, 541, 562, 556, 566, 577, 580).

Accordingly, the ALJ's finding that Plaintiff's subjective symptom testimony was not supported by the objective medical evidence was a clear and convincing reason for discounting Plaintiff's credibility. More importantly, as discussed below, this was not the sole legally sufficient reason for discounting Plaintiff's credibility.

The ALJ also properly determined that Plaintiff's testimony about the intensity, persistence and limiting effects of his symptoms was inconsistent with Plaintiff's testimony about his ability (or lack of ability) to walk and his statements to medical providers about his ability to walk (see AR 24, 26). See 20 C.F.R. § 416.929(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence . . . .").

As the ALJ noted, Plaintiff's testimony about his difficulty walking (see AR 200 [He can walk about 50 to 60 feet before needing to rest], 650 [He can walk for only approximately 15 to 25 minutes (a couple of blocks]) was inconsistent with statements made to a treating physician (AR 356 ["Exercise includes walking. Exercises daily."]) and to the consultative psychological examiner (AR 307 ["On a daily basis, the claimant watches television and goes for walks."). This was a clear and convincing reason, supported by substantial evidence in the record, for discounting Plaintiff's credibility.

The ALJ also properly determined that Plaintiff's testimony about the intensity, persistence and limiting effects of his symptoms was not supported by the conservative nature of his treatment (see AR 24). As the ALJ noted, Plaintiff generally was prescribed only mild pain relievers (i.e., Motrin, Naproxen, and Robaxin) and over-the-counter patches and creams as needed for his back issues (see AR 320-22, 324-430, 438-41, 445-50, 452-84, 563-64]). See Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007)("The ALJ also noted that [the claimant's]

32

physical ailments were treated with over-the-counter pain medication. We have previously indicated that evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."; citation omitted); <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1434 (9th Cir. 1995)(an ALJ may properly rely on the fact that prescribed conservative treatment suggests a lower level of both pain and functional limitation).  Moreover, there is no indication in the record that Plaintiff was prescribed physical therapy or was recommended surgery for his back issues, and Plaintiff testified that walking does not increase his level of pain (AR 650-51).

    The ALJ's reasons for discounting Plaintiff's credibility -- lack of support in the medical record, inconsistent statements, and conservative treatment -- sufficiently allow the Court to conclude that the ALJ's credibility finding was based on permissible grounds and supported by substantial evidence in the record.

**ORDER**

    For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

    LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: February 12, 2020

                              _____
                                       /s/
                                  ALKA SAGAR
                        UNITED STATES MAGISTRATE JUDGE